Mack White filed this personal-injury action against Wal-Mart stores, Inc., Randy Newton, and Darryl Pounds (collectively "Wal-Mart"), alleging that he was injured at a store operated by Wal-Mart in Thomasville. White claims to be experiencing pain, but the source of White's pain is in question, and, because of the uncertainty, Wal-Mart made several attempts to have White examined by its own physician to ascertain the cause of his pain. White refused Wal-Mart's informal requests, and the Clarke Circuit Court denied Wal-Mart's motion, pursuant to Rule 35, Ala. R. Civ.P., to have White examined by Wal-Mart's own physician. *Page 296 
Wal-Mart petitions this Court for a writ of mandamus directing the Circuit Court to grant its motion for a medical examination of White by Wal-Mart's own physician. Because we conclude that the trial court did not abuse its discretion in denying Wal-Mart's motion, we deny its petition for the writ of mandamus.
 I
White, who was confined to a wheelchair as a result of a previous stroke and heart attack, entered the Wal-Mart store in Thomasville to purchase a battery for his riding lawn mower. The store clerk filled the battery with battery acid and placed the battery into the basket on the front of White's wheelchair. Mr. White's wife then wheeled him to the front of the store, where she noticed a wet spot on Mr. White. White contends that this wet spot was battery acid that had leaked from the recently filled battery. White was treated by Dr. Satish Poddar, an emergency-room physician, immediately after the incident. Subsequently, White had his regular physician, Dr. Shepherd Fleet, a neurologist who had been treating him before the incident, examine him with respect to what White described as a continuing burning sensation in his foot.
White intends to call Dr. Fleet to testify as his expert at trial. In his deposition, Dr. Fleet offered his opinion that White's continuing discomfort in his injured foot was caused by the battery acid that White says dripped onto his foot. Wal-Mart intends to call Dr. John Hinton, another neurologist, as an expert witness to rebut the testimony of Dr. Fleet. In his deposition, Dr. Hinton stated his opinion that White's pain results from a medical condition that had existed before the Wal-Mart incident. Although Dr. Hinton formed his opinion based on White's medical records alone, Wal-Mart has made several attempts to arrange for a medical examination of White by Dr. Hinton. White has refused Wal-Mart's informal requests, and the trial court has denied Wal-Mart's formal motions for the examination. Wal-Mart filed this petition for a writ of mandamus, asking this Court to direct the trial court to require White to submit to a physical examination by Dr. Hinton.
 II.
Mandamus is an extraordinary remedy and requires a showing that there is `(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.'" Ex parte Gates, 675 So.2d 371, 374 (Ala. 1996); Ex parteEdgar, 543 So.2d 682, 684 (Ala. 1989). Wal-Mart contends that under Rule 35 it has a clear legal right to the order it seeks from the trial court.
Rule 35, Ala. R. Civ.P., governs motion for physical and mental examinations of parties. It provides in pertinent part:
 "(a) Order for examination. When the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination
by a suitably licensed or certified examiner or to produce for examination the person in the party's custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made."
(Emphasis added.) In general, "[t]he trial court is vested with broad and considerable discretion in controlling the discovery process and in making rulings on all matters pertaining to discovery." Napier v. McDougal, 601 So.2d 446, 447 (Ala. 1992) (quoting Iverson v. Xpert Tune, Inc., 553 So.2d 82, 87 (Ala. 1989)) Accordingly, in regard to a mandamus petition concerning a trial court's ruling on a Rule 35 motion, this Court has stated, "The power to grant the motion rests in the sound discretion of the trial court, and [its ruling on the motion] will be reversed only upon a showing of an abuse of discretion." *Page 297 Clement v. Merchants Nat'l Bank of Mobile, 493 So.2d 1350 (Ala. 1986).
Wal-Mart argues, among other things, that it is fundamentally unfair to allow White's expert to conduct a physical examination, but to prevent Wal-Mart's expert from conducting a physical examination. White responds by stating, among other things, that because Dr. Hinton has already formed an opinion based on White's medical records, Wal-Mart has failed to establish good cause for a physical examination, as required by Rule 35. Thus, White asks us to deny the mandamus petition because, he argues, Wal-Mart has not shown that the trial court abused its discretion with respect to the elements of Rule 35(a) at issue.
The facts before the Court clearly indicate that White's physical condition is "in controversy," as required by Rule 35(a). White filed this personal-injury action, seeking damages for pain and suffering, including continuing burning sensation in his foot. White asserts that this ongoing discomfort is caused by the battery acid that he alleges a Wal-Mart employee allowed to leak on him. Wal-Mart argues that the ongoing discomfort is the result of White's previously existing medical conditions, chiefly poor blood circulation. Because the medical cause of White's discomfort is clearly in dispute, Wal-Mart has established that White's "physical condition" is "in controversy." Compare Lahr v.Fulbright Jaworski, L.L.P., 164 F.R.D. 196, 199 (N.D.Tex. 1995) (holding that the plaintiff had placed her medical condition in controversy by alleging hat she had suffered "severe mental or emotional distress"), with Neal v. Siegel-Robert, Inc.,171 F.R.D. 264, 267 (E.D.Mo. 1996) (holding that the plaintiff had not placed his mental condition in controversy because he was not complaining of any definable psychological symptoms).
Rule 35(a) requires not only that the physical or mental condition of a party be "in controversy," but also that the party requesting the examination show "good cause" for the examination. See Schlagenhauf v. Holder, 379 U.S. 104, 118, 85 S.Ct. 234,13 L.Ed.2d 152 (1964) ("[Rule 35's] good-cause requirement is not a mere formality, but is a plainly expressed limitation on the use of that Rule."). In assessing whether the movant has shown good cause for the requested examination, the trial court should consider whether the movant has demonstrated that the examination results would be relevant, whether the movant has shown an actual need for the information to be gotten by an examination, and whether the examination by the movant's expert would preserve the relative equal footing of the parties with respect to the evidence at issue. See Pearson v. Northfolk-Southern Ry.,178 F.R.D. 580, 582 (M.D.Ala. 1998) (requiring the movant to demonstrate relevance and need); Duncan v. Upjohn Co.,155 F.R.D. 23, 25 (D.Conn. 1994) (assessing whether the examination would preserve the "equal footing" of the parties).[1]
A movant meets the relevancy requirement of Rule 35(a) by showing that the results of the requested examination will tend to make the existence of a fact at issue more, or will make it less, probable. See Rule 401, Ala. R. Evid. (defining "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"); see generally Duncan, 155 F.R.D. at 25 (noting that to the extent an ongoing injury is claimed, the relevance aspect of "good cause" can be read as merging with Rule 35(a)'s "in controversy" requirement). Wal-Mart has clearly demonstrated that the requested examination would produce relevant information. The medical cause of White's discomfort is the central focus of the litigation below. The results of an examination would tend to make it either more probable or less probable that the alleged cause of White's discomfort — battery acid — is in fact the actual cause of the discomfort. SeePearson, 178 F.R.D. at 582; cf. *Page 298 Clement, 493 So.2d at 1354 (holding that blood-test results would be irrelevant in action challenging parentage where the results could not be compared to information relating to necessary parties.) Thus, Wal-Mart has established relevance.
A movant meets the "need" requirement of Rule 35(a) by showing that the requested examination will produce some relevant evidence that is not available from other sources. Pearson,178 F.R.D. at 582; accord Schlagenhauf, 379 U.S. at 118, 85 S.Ct. 234
("The ability of the movant to obtain the desired information by other means is also relevant [to a Rule 35(a) determination]."). Accordingly, several courts have refused to order physical or mental examinations where the movant could obtain the desired information from other sources. See e.g., Pearson,178 F.R.D. at 582 (denying an examination where the movant could obtain copies of relevant records); Marroni v. Matey, 82 F.R.D. 371, 372
(E.D.Pa. 1979) (denying an examination where the movant had not established that the information was unavailable from less intrusive methods) Hughes v. Groves 47 F.R.D. 52, 57 (W.D.Mo. 1969) (stating that the discovery of medical records may deprive the movant of "good cause" for an examination); Petition ofTrinidad Corp., 238 F. Supp. 928, 935 (E.D.Va. 1965) (stating that the discovery of medical records may deprive the movant of the right to thereafter seek an examination); Martin v. Tindell,98 So.2d 473, 475 (Fla. 1957) (stating although the denial of a Rule 35 motion might be an abuse of discretion where the defendant does not have access to the reports of either the hospital or the physician, there was no abuse of discretion in denying the motion where the defendant had such access cert. denied, 355 U.S. 959, 78 S.Ct. 545, 2 L.Ed 534 (1958); cf. Lahr,164 F.R.D. at 200-01 (ordering an examination where the defendant demonstrated that the existing, medical evidence was inadequate to evaluate the employees mental condition and the defendant's psychologist averred that a mental examination was necessary to evaluate the employee's emotional state); Eckman v. University ofRhode Island, 160 F.R.D 131, 434 (D.R.I. 1995) (ordering an examination where the movant established that the severity of the injury would play a central role and that the examination would result neither in duplication of prior examinations nor in cumulative or invasive procedures). But see Anson v. Fickel,110 F.R.D. 184, 186 (N.D.Ind. 1986) (finding good cause for an examination even though the movant had access to the plaintiff's medical records).
Wal-Mart's expert witness, Dr. Hinton, has already examined White's medical records and, based on those records, has given his opinion as to the cause of the burning sensation in White's foot. Neither Wal-Mart nor Dr. Hinton has established that the requested examination would provide an, y specific additional information that is not available from another source. Accordingly, Wal-Mart has not established an actual need for the requested examination. See Pearson 178 F.R.D. at 582.
A movant under Rule 35(a) may also show that the requested examination is necessary to place the parties on an equal footing with respect to the evidence. See Duncan 155 F.R.D. at 25 ("[O]ne purpose in granting a request for a[n] . . . examination pursuant to Rule 35 is to `preserve the equal footing of the parties to evaluate the plaintiff's [condition]. . . .'") (quoting Tomlin v.Holecek, 150 F.R.D. 628, 630 (D.Minn. 1993) (emphasis added)). White intends to prove his claim against Wal-Mart through the trial testimony of his own expert witness, who has examined White. See generally id. (noting that the nonmovant's use of an expert who has examined a party will often supply good cause for an examination by the Rule 35 movant). Moreover, White has refused several requests by Wal-Mart to submit to a physical examination. At the same time, however, White has consistently argued to the trial court that Wal-Mart's expert should not be allowed to testify because he has not personally examined White. Thus, the lack of equal footing is exacerbated by the tactics of White's counsel. See id.
After considering and balancing each of the factors stated above, we conclude that the trial court did not abuse its discretion in denying Wal-Mart's Rule 35 motion. Wal-Mart *Page 299 
failed to demonstrate that it needed the examination after Dr. Hinton had already formed an opinion based on White's medical records. Nonetheless, it is incumbent on the trial court to preserve Wal-Mart the equal footing it is due. See Duncan,155 F.R.D. at 25. The trial court should fashion appropriate remedial measures to prevent White from, on the one hand, refusing to submit to a physical examination by Dr. Hinton and on the other hand suggesting to the jury that his expert witness's testimony should be given greater weight because that expert, unlike Dr. Hinton has examined White.
 III.
The trial court did not abuse its discretion in denying Wal-Mart's Rule 35(a) motion for a physical examination of White by Wal-Mart's own physician. Therefore, we deny Wal-Mart's petition for the writ of mandamus.
WRIT DENIED.
HOOPER, C.J., and MADDOX, ALMON, SHORES, HOUSTON KENNEDY, and COOK, JJ., concur.
Lyons, J., recuses himself.
[1] Wal-Mart relies on Alabama Great Southern R. Co. v. Hill,90 Ala. 71, 8 So. 90 (1889), for the proposition that a plaintiff's personal physician is inherently biased and that a physical examination by the defendant's physician should be granted in such situations. Although Hill so held, the cases decided in this century interpreting Rule 35, which was adopted in 1973, provide more persuasive authority for the modern understanding of Rule 35.